IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ELIZABETH CARRASQUILLO ORTÍZ, et al.,

   Plaintiffs,

      v.

AMERICAN AIRLINES, INC.,

   Defendant.

CIVIL NO. 13-1449 (GAG)

# REPORT AND RECOMMENDATION[1]

## I. Procedural Background

On February 6, 2014 plaintiffs and American Airlines, Inc. ("defendant" or "American") filed a joint motion regarding discovery. ECF No. 39. The parties informed that court that plaintiffs requested that defendant produce documents and information to them regarding: (A) defendant's personnel policies and procedures, applicable to all of its employees; (B) documents related to the practice of relocations or transfers of American employees from its Puerto Rico office or branches outside of Puerto Rico; (C) information regarding whether those offices or branches operate in an integrated manner or independently from one another; and (D)

---

[1] Although discovery disputes are typically non-dispositive, in this instance the non-dispositive matters are inextricably intertwined with the disposition of this case. As stated in the minutes from the Initial Scheduling Conference held on August 16, 2013: "According to the parties, liability depends on whether defendant is under a legal duty pursuant to Puerto Rico Law 80 to compute seniority on the basis of employees of the company outside of Puerto Rico, in addition to those within Puerto Rico. Because liability is dependent strictly upon an issue of law and damages calculated by formula under Law 80, the parties indicated that they expect the case to be decided by cross-motions for summary judgment, rather than by trial. The parties are in agreement that the issue of law in question has not been decided by the Supreme Court of Puerto Rico." ECF No. 25, at 2. A review of American's pending motion for summary judgment reveals that the central issue in that dispositive motion—whether Law 80 requires analysis of seniority of the employees in plaintiffs' occupational classifications outside of Puerto Rico—is the same as that at issue in plaintiff's motion to compel, which has been referred to the undersigned. See ECF No. 56. Because, as a practical matter, a ruling on plaintiffs' motion to compel would constitute a ruling on this case-dispositive issue of local law and on the merits of this case, a report and recommendation is being issued in lieu of an opinion and order.

information about the seniority of American employees within the same job classification as plaintiffs including information about employees outside of Puerto Rico. Id. at 2. American objected to these discovery requests, contending "that the seniority analysis required to be performed by Law No. 80, when considering terminations based on reorganization, should not include employees within the same classifications as [plaintiffs] who work for American offices or branches outside of Puerto Rico." Id. The court ordered the parties to file motions indicating why the concern of how this issue affects discovery was brought to the court's attention six months after the Initial Scheduling Conference ("ISC") and clarifying whether, for all practical purposes, the joint motion is really request for a declaratory judgment on an issue that has yet to be decided by the Puerto Rico Supreme Court ("PRSC"). ECF No. 41. On March 12, 2014 and March 14, 2014, respectively, defendant and plaintiffs filed motions in compliance with this order. ECF Nos. 42; 45. On May 30, 2014, American filed a motion for summary judgment. ECF No. 56. On June 16, 2014, plaintiffs filed a motion to compel discovery, seeking the information described above, and a motion for an extension of time until 20 days after the motion to compel is ruled upon to oppose the motion for summary judgment. ECF Nos. 58; 59.

## II.     Discussion

"Puerto Rico Law 80 provides the exclusive remedy under Puerto Rico law for an employee who is discharged without demonstrating just cause." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 58 (1st Cir. 2000) (citing P.R. Laws Ann. tit. 29 §§ 185a-185m). If an employee brings a claim under Law 80, the employer has the burden to prove that the dismissal was justified. P.R. Laws Ann. tit. 29, § 185k. Assuming that the employer provides evidence of "just cause," § 3 of Law 80 establishes a requirement on the part of employers "to retain with preference in the job those employees of greater seniority provided there are positions

vacant or filled by employees of less seniority in the employment within their occupational classification which may be held by them . . . ." P.R. Laws Ann. tit. 29, § 185c.

In the complaint in this case, plaintiffs allege that they were terminated without just cause, and that American violated § 3 of Law 80, because it "did not conduct an analysis of the seniority, by occupational classification, of the plaintiffs, based on **all** of the employees of the company, prior to the date of termination of each one. Within the occupational classifications of the plaintiffs worldwide there were vacancies or positions occupied by employees with less seniority in the employment than the plaintiffs." ECF No. 1-1, at 11 ¶¶ 4, 9, 14, 19, 24, 29, 34, 40. They state that "[d]ue to the defendant's failure to comply with [§ 3 of Law 80], which provides the order of retention of employees in any case where the termination is due to the reasons stated in the subsection (d), (e) and (f) of Section 185b of Title 29, American Airlines cannot raise as a defense the original justification for the termination of plaintiffs, wherefore the dismissal of the same was without just cause." Id. ¶ 42. Therefore, they allege that they are entitled to a severance payment under Law 80. Id. ¶ 43.

In its motion in compliance, American contends that after the ISC, the PRSC "definitively decided" the issue of the extra-territorial application of Law 80 in Reyes Sánchez v. Eaton, 2013 TSPR 108 (2013),[2] asserting that the PRSC held that Law 80 "did not apply to operations outside of Puerto Rico, even where the employer has offices and transfers employees outside of Puerto Rico." ECF No. 42, at 2. Defendant's position is that in light of the decision in Reyes Sánchez, "*any* discovery concerning its operations outside of Puerto Rico, including inquiries into its policies and transfers abroad, are [*sic*] completely irrelevant." Id. at 3. Plaintiffs disagree with defendant's reading of the case; in their opinion, the PRSC's analysis in Reyes

---

[2] Pursuant to the court's order on March 13, 2014 (ECF No. 44) American submitted a certified English-language translation of this opinion. See ECF No. 47.

3

Sánchez "was limited to the operations of a Puerto Rico corporation." ECF No. 45, at 3. They attempt to differentiate Reyes Sánchez from the facts of the instant case, stating:

> In this case, Plaintiffs' employer was American, a United States airline headquartered in Fort Worth, Texas and doing business directly (not through a local subsidiary) in all fifty (50) States and Puerto Rico. Thus, Plaintiffs' contention is that the seniority analysis required to be made when Plaintiffs were terminated had to be done company-wide and not limited to its Puerto Rico branch or office. After all, American decided to do business in Puerto Rico, not through a subsidiary, but using the same corporate entity through which it does business elsewhere in the United States.

Id.

In Reyes Sánchez, the PRSC addressed the question of whether the order of retention based on seniority "had to be established based on all the employees of the different establishments of the company in Puerto Rico." ECF No. 47-1, at 16. Aspects of the PRSC's discussion and analysis in Reyes Sánchez are indeed applicable to the broader issue relevant to this case. However, the PRSC did not expressly rule on the issue of whether the order of retention based on seniority under § 3 should ever be based on comparisons with employees working outside of Puerto Rico where a company does business in Puerto Rico and throughout the United States. Certification of an issue to the PRSC requires "that (1) questions of Puerto Rican law be involved; (2) said questions may determine or are determinant of the outcome of the case; (3) there are no clear precedents in the Puerto Rico Supreme Court's caselaw; and (4) an account of all the facts relevant to said questions are included, clearly showing the nature of the controversy in which the questions arise." Cruz Aviles v. Bella Vista Hosp., Inc., 112 F.Supp.2d 200, 204 (D.P.R. 2000) (citations omitted). The matter is purely an issue of Puerto Rican law, which will likely be outcome-determinative in this case. Therefore, it is recommended that the question be certified to the PRSC prior to ruling on the pending motion to compel and motion for summary judgment.

4

In the alternative, if the court is not inclined to submit the issue for certification, based on the opinion in Reyes Sánchez it is recommended that discovery be confined to information regarding seniority of employees within Puerto Rico and of transfers made within Puerto Rico. The PRSC noted that when § 3 was first enacted "there was a legal lacuna as to the order of retention for employees based on seniority in companies that had more than one establishment *in Puerto Rico*." ECF No. 47-1, at 17 (emphasis added). For a period of time, the Puerto Rico Department of Labor and Human Resources ("DLHR") interpreted § 3 to require an "order of retention based on seniority . . . based on all the employees of the different establishments of the company *in Puerto Rico*." Id. (emphasis added) (citing Report of the Veteran's Affairs and Labor Commission for the House of Representatives regarding substitution of S.B. 908 from May 30, 1986). The rationale behind this interpretation was "to prevent, for example, a business with several establishments from transferring employees that it wished to terminate to establishments where it was going to carry out personnel cuts." Id. at 18. As the PRSC explained, however, the DLHR later modified its interpretation of § 3 regarding the order of retention of employees by seniority in companies with more than one office, factory, branch or plant. Id. at 18, n. 16. The Legislative Assembly (the "legislature") adopted the DLHR's revised interpretation and amended the statute in order "to limit the circumstances under which an employee of an employer that has several establishments *in Puerto Rico* is affected by reductions of personnel in establishments of the company with which he employee has had no relationship whatsoever," while maintaining "the right of preferential retention based on seniority of employees that work in companies in which the different establishments did have close company bonds." Id. at 18-19 (emphasis added) (citing Report of the Labor Committee to the Senate regarding the substitution of S.B. enacted in May 21, 1986). To achieve that objective,

5

the legislature added the following two paragraphs to the seniority provisions in § 3, which the PRSC described as "additional elements that companies that have more than one establishment *in Puerto Rico* must comply with when determining the retention order of employees based on seniority":

> (a) Concerning personnel reduction or terminations based on the reasons included in paragraphs (d), (e) and (f) of sec. 185b of this title in companies that have several offices, factories, branches, and which have the customary and regular practice that employees of an office, factory or plant do not transfer to a different one, and where said units operate substantially independently as to aspects regarding personnel, seniority of employees within the occupational classification which is the subject of personnel reduction shall be calculated taking into account solely employees in the office, factory, branch or plant in which said personnel reduction shall be carried out.
>
> (b) As to companies with several offices, factories, branches or plants in which there is the usual and customary practice where employees transfer from one unit to another and the different units operate in a manner that is substantially integrated as to personnel aspects, seniority shall be calculated based on all of the employees of the company, that is, taking into account all of the offices, factories, branches or plants which are in the occupational classification that is the subject of personnel reduction.

P.R. Laws Ann. tit. 29, § 185c; ECF No. 47-1, at 17 (emphasis added).

At no point in the history of § 3 did the prevailing interpretation regarding the order of retention by seniority encompass employees that work in establishments outside of Puerto Rico. The original, more expansive, DLHR interpretation of § 3 was that the order of retention by seniority included employees of a company working at all establishments within Puerto Rico. The modifications to the provision made the analysis of order of retention by seniority more restrictive; for companies in which different establishments in Puerto Rico operate with substantial independence, only employees working at the particular office, factory, branch or

plant in which the reduction in force took place are considered in the seniority analysis, let alone those employees working in the fifty states or worldwide.

Moreover, in the course of its analysis, the PRSC stated: "As to the transfers alleged which arose from establishments in other jurisdictions, we believe that [§ 3 of Law 80] does not require an analysis of movement of personnel between the company's establishments on an international level. This analysis is limited to determining the frequency of transfers of employees between the company's establishments *in the jurisdiction of Puerto Rico*." Id. at 25 (emphasis added). Although the PRSC's statement that § 3 of Law 80 does not require a comparison with employees *internationally* does not foreclose the possibility that seniority analysis should encompass Puerto Rico and the fifty states, the PRSC's expression that transfer analysis under § 3 is limited to determining the frequency of transfers "in the jurisdiction of Puerto Rico" provides clarification. It suggests that the transfer analysis should be confined to Puerto Rico alone, regardless of whether the transfers from outside the jurisdiction are from establishments within the United States or from establishments in other nations.

Overall, in light of the Reyes Sánchez opinion, if in its sound discretion the court does not wish to submit the legal question at issue in this case to the PRSC for certification, it is recommended the scope of discovery be limited to information regarding American's operations and personnel matters within Puerto Rico. Specifically, the motion to compel (ECF No. 58) should be granted in part and denied in part, as follows:

1. The requests for information as to whether American operates in an integrated manner for personnel purposes outside of Puerto Rico (Request for Admission Nos. 3 and 6; Interrogatories Nos. 2 and 25; Request for Production of Documents No. 5) should be denied as irrelevant.

2. Plaintiffs' requests for information regarding American's relocations or transfers of employees to and from branches outside of Puerto Rico[3] (Requests for Admission Nos. 4 and 5; Interrogatories Nos. 3-5, 9, 19-21, and 24; Request for Production of Documents No. 9) should be denied as irrelevant.

3. The requests for date-of-hire and other seniority information regarding American employees within the same job classification as plaintiffs (Requests for Admission Nos. 11 and 12; Nos. Interrogatories 12, 15, 26-27, and 29; and Requests for Production of Documents Nos. 3, 19, and 28-29) should also be denied as irrelevant, to the extent that they solicit information related to American employees outside of Puerto Rico. To the extent that the discovery requests solicit information about other employees working for American within Puerto Rico, however, the motion to compel should be granted as of the date of plaintiffs' termination.

4. The motion to compel to should be granted as to plaintiffs' requests for handbooks and policies regarding discharging employees during a reduction in force (Requests for Production of Documents Nos. 8, 10, and 11), but only to the extent such policies were in effect at the time plaintiffs were discharged. However, to the extent that plaintiffs also solicit policies regarding criteria for assigning, training, evaluating, transferring, giving supervisory duties, promoting, increasing salary, and disciplining employees, the request to compel should be denied as the same goes beyond the scope of the issue at hand, that is, seniority.

---

[3] The briefing by the parties does not clarify whether American has more than one establishment within Puerto Rico. If that is the case, plaintiffs' requests for information should be granted as they relate to transfers between or among establishments within Puerto Rico. At this juncture, the court will not speculate as to whether transfers within Puerto Rico, if at all, were frequent, thus reflecting "close company bonds."

5. Plaintiffs' requests for information (Request for Production of Documents Nos. 4, 25, 30) regarding the reasons for their terminations should be granted in part, as they are relevant to their claims that they were terminated without just cause, but the production should be limited in scope. Upon the execution of a confidentiality agreement between the parties, any physical or electronically stored documents from the two years prior to plaintiffs' terminations that explain or reveal American's reason(s) for discharging plaintiffs or which American used to base its decision to terminate plaintiffs should be produced to plaintiffs. If any such documents contain legal advice that is protected by the attorney-client privilege, the portion containing legal advice can be redacted. With regard to the request for all lease agreements for American Airlines, Inc. offices in Puerto Rico, it is recommended that the motion to compel be denied on relevance grounds.

6. As to the request for the names of the individuals who were involved in or participated in the decisions to terminate each of the plaintiffs (Interrogatory No. 28), it is recommended that the request be granted in part, but limited to the names of individuals who were directly involved in the decisions to terminate plaintiffs.

7. The motion to compel should be granted as to plaintiffs' requests for their own personnel records and information (Interrogatory No. 23; Request for Production of Documents No. 21) as the same are relevant to the calculation of severance under Law 80. The requests for information regarding employees who were granted Law 80 severance payments (Interrogatories Nos. 30, 31; Request for Production of Documents No. 31) should be denied, as such information is irrelevant for the purposes of calculating plaintiffs' severance payments under Law 80, and its relevance to this case is not otherwise apparent.

8. With regard to plaintiffs' request for documents reflecting the number of American's employees between 2000 to date, and for "plans or goals for reducing or reallocating the number of employees," the motion to compel should be granted in part and denied in part. The request should be limited to information regarding American's employees within Puerto Rico and to the two years before and after plaintiffs' terminations. If a physical or electronically-stored document reflecting the number or American's employees in Puerto Rico exists, American should produce such information to plaintiffs, providing at least one yearly figure for each of years in the relevant time period. As to the request for plans and goals, American should only be required to produce a written plan to reduce the number of its employees if plaintiffs were included within the plan; the request should be denied as overbroad with respect to all other company plans and goals.

Finally, with respect to the motion for an extension of time to file a response to the motion for summary judgment twenty days after the court's ruling on the motion to compel (ECF No. 59), it is recommended that the same be granted.

The parties have fourteen (14) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this report and recommendation. Fed. R. Civ. P. 72(b)(2); Fed. R. Civ. P. 6(c)(1)(B); D.P.R. Civ. R. 72(d); see also 28 U.S.C. § 636(b)(1); Henley Drilling Co. v. McGee, 36 F.3d 143, 150–51 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).

**IT IS SO RECOMMENDED**

In San Juan, Puerto Rico, this 25th day of June, 2014.

s/Marcos E. López<br>
U.S. Magistrate Judge